# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 14-321V
Filed: October 21, 2019

| | | |
|---|---|---|
| * * * * * * * * * * * * | * | |
| ASHLEY RICE *and* CRAIG RICE | * | UNPUBLISHED |
| *parents of R.R, a minor,* | * | |
| | * | |
| Petitioners, | * | Decision on Joint Stipulation; |
| | * | Acute Hemorrhagic |
| v. | * | Leukoencephalitis ("AHLE"); |
| | * | Acute Disseminated |
| SECRETARY OF HEALTH | * | Encephalomyelitis ("ADEM"); |
| AND HUMAN SERVICES, | * | Measles-mumps-rubella |
| | * | ("MMR") Vaccine; Hepatitis A |
| Respondent. | * | Vaccine; Influenza Vaccine |
| * * * * * * * * * * * * | * | |

*Edward Kraus, Esq.*, Law Offices of Chicago Kent, Chicago, IL, for petitioner.
*Traci Patton, Esq.*, US Department of Justice, Washington, DC, for respondent.

## DECISION ON JOINT STIPULATION[1]

**Roth**, Special Master:

On April 21, 2014, Ashley and Craig Rice ["Mr. and Mrs. Rice" or "petitioners"] filed a petition for compensation under the National Vaccine Injury Compensation Program[2] on behalf of their minor child, R.R. Petitioners allege that R.R. suffered from acute hemorrhagic leukoencephalitis ("AHLE"), a severe form of acute disseminated encephalomyelitis ("ADEM") after receiving measles-mumps-rubella ("MMR"), hepatitis A, and influenza vaccinations on March 26, 2012. Stipulation, filed Oct. 18, 2019, at ¶¶ 1-4. Respondent denies that any of the aforementioned immunizations caused R.R.'s injury or her current condition. Stipulation at ¶ 6.

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Nevertheless, the parties have agreed to settle the case. On October 18, 2019, the parties filed a joint stipulation agreeing to settle this case and describing the settlement terms.

Respondent agrees to issue the following payments:

**(1) A lump sum of $741,454.94**, representing compensation for first year life care expenses ($141,454.94) and trust seed funds ($600,000.00), in the form of a check payable to Regions Bank, as trustee of the grantor reversionary trust established for the benefit of R.R.;

**(2) A lump sum of $586,000.00**, representing compensation for lost earnings and pain and suffering, in the form of a check payable to petitioners as guardian(s)/conservator(s) of the estate of R.R., for the benefit of R.R. No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as guardian(s)/conservator(s) of R.R.'s estate;

**(3) A lump sum of $14,000.00**, representing compensation for past unreimbursable expenses, in the form of a check payable to petitioners, Ashley and Craig Rice;

**(4) A lump sum of $172,366.03**, representing reimbursement of a lien for services rendered on behalf of R.R., in the form of a check payable jointly to petitioners and

> DHHS
> Reporting and Receivables
> P.O. Box 8355
> Columbia, SC 29202-9189
> Case Number: 327172
> Attn: Latwainia Benjamin

**(5) An amount sufficient** to purchase the annuity contract described in paragraph 10 of the stipulation attached hereto, paid to the life insurance company from which the annuity will be purchased. This amount represents compensation for all damages that would be available under § 300aa-15(a).

I adopt the parties' stipulation attached hereto, and award compensation in the amount and on the terms set forth therein. The clerk of the court is directed to enter judgment in accordance with this decision.[3]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS**

ASHLEY RICE and CRAIG RICE,  )
parents of R.R., a minor,  )
                              )
        Petitioners,  )  No. 14-321V
                                )  Special Master Roth
v.                               )  ECF
                                )
SECRETARY OF HEALTH AND HUMAN  )
SERVICES,  )
                                )
        Respondent.  )

## STIPULATION

The parties hereby stipulate to the following matters:

1. On behalf of their daughter, R.R., petitioners filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to 34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to R.R.'s receipt of measles-mumps-rubella ("MMR"), Hepatitis A, and influenza ("flu") vaccines, which vaccines are contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. R.R. received the immunizations on March 26, 2012.

3. The vaccines were administered within the United States.

4. Petitioners allege that R.R. suffered from "acute hemorrhagic leukoencephalitis ("AHL[E]"), a severe form of acute disseminated encephalomyelitis ("ADEM")," as a result of receiving the vaccines, and suffered the residual effects of this injury for more than six months.

5. Petitioners represent that there has been no prior award or settlement of a civil action for damages on behalf of R.R. as a result of her condition.

6. Respondent denies that the vaccines caused R.R. to suffer from AHLE, ADEM, or any other injury or her current condition.

7. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioners have filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

a. A lump sum of $741,454.94, which amount represents compensation for first year life care expenses ($141,454.94) and trust seed funds ($600,000.00), in the form of a check payable to Regions Bank, as trustee of the grantor reversionary trust established for the benefit of R.R.;

b. A lump sum of $586,000.00, which amount represents compensation for lost earnings and pain and suffering, in the form of a check payable to petitioners as guardian(s)/ conservator(s) of the estate of R.R. for the benefit of R.R. No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as guardian(s)/conservator(s) of R.R.'s estate;

c. A lump sum of $14,000.00, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to petitioners, Ashley and Craig Rice;

d. A lump sum of $172,366.03, which amount represents reimbursement of a lien for services rendered on behalf of R.R., in the form of a check payable jointly to petitioners and

DHHS
Reporting and Receivables
P.O. Box 8355
Columbia, SC 29202-9189
Case Number: 327172
Attn: Latwainia Benjamin

2

e. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

9. The Life Insurance Company must have a minimum of $250,000,000.00 capital and

surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company

must have one of the following ratings from two of the following rating organizations:

a.    A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

b.    Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

c.    Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

d.    Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

10. The Secretary of Health and Human Services agrees to purchase an annuity contract

from the Life Insurance Company for the benefit of R.R., pursuant to which the Life Insurance

Company will agree to make payments periodically to the trustee, for the following items of

compensation:

a. For future unreimbursable Blue Cross Blue Shield Maximum-out-of-Pocket expenses, beginning on the first anniversary of the date of judgment, an annual amount of $6,850.00 to be paid up to the anniversary of the date of judgment in year 2032, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

b. For future unreimbursable Affordable Care Act Maximum-out-of-Pocket expenses, beginning on the anniversary of the date of judgment in year 2032, an annual amount of $2,700.00 to be paid up to the anniversary of the date of judgment in year 2048, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

c. For future unreimbursable Affordable Care Act Premium expenses, beginning on the anniversary of the date of judgment in year 2032, an annual amount of $5,064.84 to be paid up to the anniversary of the date of judgment in year 2035. Then, on the anniversary of the date of judgment in year 2035, a lump sum of $5,085.12. Then, on the anniversary of the date of judgment in year 2036, a lump sum of $5,186.40. Then, on the anniversary of the date of judgment in year 2037, a lump sum of $5,307.96. Then, on the

3

anniversary of the date of judgment in year 2038, a lump sum of $5,505.60. Then, on the anniversary of the date of judgment in year 2039, a lump sum of $5,667.60. Then, on the anniversary of the date of judgment in year 2040, a lump sum of $5,748.60. Then, on the anniversary of the date of judgment in year 2041, a lump sum of $5,870.16. Then, on the anniversary of the date of judgment in year 2042, a lump sum of $5,991.72. Then, on the anniversary of the date of judgment in year 2043, a lump sum of $6,067.80. Then, on the anniversary of the date of judgment in year 2044, a lump sum of $6,148.80. Then, on the anniversary of the date of judgment in year 2045, a lump sum of $6,189.36. Then, on the anniversary of the date of judgment in year 2046, a lump sum of $6,229.80. Then, on the anniversary of the date of judgment in year 2047, a lump sum of $6,270.36, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

d. For future unreimbursable Medicare Part B, Medigap Deductible, and Medigap Premium expenses, beginning on the anniversary of the date of judgment in year 2048, an annual amount of $6,253.40 to be paid up to the anniversary of the date of judgment in year 2075. Thereafter, beginning on the anniversary of the date of judgment in year 2075, an annual amount of $4,616.52 to be paid for the remainder of R.R.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

e. For future unreimbursable Dentist expenses, beginning on the first anniversary of the date of judgment, an annual amount of $282.00 to be paid up to the anniversary of the date of judgment in year 2029, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

f. For future unreimbursable Optometry and Neuro Feedback expenses, beginning on the first anniversary of the date of judgment, an annual amount of $2,692.00 to be paid for the remainder of R.R.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

g. For future unreimbursable Care Management,  PCP Mileage, Neurology Mileage, Physiatrist Mileage, Developmental Pediatrician Mileage, Optometry Mileage, Ophthalmology Mileage, ENT Mileage, Dentist Mileage, Neuro Feedback Mileage, and Endocrinology Mileage expenses, beginning on the first anniversary of the date of judgment, an annual amount of $727.80 to be paid up to the anniversary of the date of judgment in year 2024. Then, on the anniversary of the date of judgment in year 2024, a lump sum of $732.08.  Then, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $727.80 to be paid up to the anniversary of the date of judgment in year 2029. Then, beginning on the anniversary of the date of judgment in year 2029, an annual amount of $716.71 to be paid up to the anniversary of the date of judgment in year 2031. Then, on the anniversary of the date of judgment in year 2031, a lump sum of $1,361.71.  Then, on the anniversary of the date of judgment in year 2032, a lump sum of $1,357.43.  Then, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $712.43 to be paid up to the anniversary of the date of judgment in year 2044. Thereafter, beginning on the anniversary of the date of judgment

4

in year 2044, an annual amount of $1,357.43 to be paid for the remainder of R.R.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

h. For future unreimbursable Diaper, Wipe, Swim Diaper, Diaper Genie, Disposable Underpad, Washable Underpad, and Amazon Prime membership expenses, beginning on the first anniversary of the date of judgment, an annual amount of $1,558.10 to be paid for the remainder of R.R.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

i. For future unreimbursable Specialized Clothing and Shoe Allowance expenses, beginning on the first anniversary of the date of judgment, an annual amount of $400.00 to be paid up to the anniversary of the date of judgment in year 2029, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

j. For future unreimbursable Occupational Therapy, Physical Therapy, and Speech Therapy expenses, beginning on the first anniversary of the date of judgment, an annual amount of $18,200.00 to be paid up to the anniversary of the date of judgment in year 2023. Then, beginning on the anniversary of the date of judgment in year 2023, an annual amount of $10,200.00 to be paid up to the anniversary of the date of judgment in year 2025. Then, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $5,400.00 to be paid up to the anniversary of the date of judgment in year 2028. Then, beginning on the anniversary of the date of judgment in year 2028, an annual amount of $800.00 to be paid up to the anniversary of the date of judgment in year 2032. Thereafter, beginning on the anniversary of the date of judgment in year 2048, an annual amount of $390.00 to be paid for the remainder of R.R.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

k. For future unreimbursable Tutoring expenses, beginning on the first anniversary of the date of judgment, an annual amount of $2,160.00 to be paid up to the anniversary of the date of judgment in year 2033, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

l. For future unreimbursable Special Needs Camp expenses, beginning on the first anniversary of the date of judgment, an annual amount of $300.00 to be paid up to the anniversary of the date of judgment in year 2032, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

m. For future unreimbursable Therapeutic Horseback Riding expenses, beginning on the first anniversary of the date of judgment, an annual amount of $920.00 to be paid for the remainder of R.R.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

n. For future unreimbursable Keekaroo High Chair, Shower Chair, Portable Safety Sleeper, Gait Trainer, Augmentative Communication Device, Apps, and Eyeglass

expenses, beginning on the first anniversary of the date of judgment, an annual amount of $474.20 to be paid up to the anniversary of the date of judgment in year 2022. Then, on the anniversary of the date of judgment in year 2022, a lump sum of $1,534.83. Then, on the anniversary of the date of judgment in year 2023, a lump sum of $523.00. Then, on the anniversary of the date of judgment in year 2024, a lump sum of $983.00. Then, on the anniversary of the date of judgment in year 2025, a lump sum of $1,288.00. Then, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $569.00 to be paid up to the anniversary of the date of judgment in year 2028. Then, on the anniversary of the date of judgment in year 2028, a lump sum of $1,288.00. Thereafter, beginning on the anniversary of the date of judgment in year 2029, an annual amount of $671.71 to be paid for the remainder of R.R.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

o. For future unreimbursable Activity Chair and Tryke expenses, on the anniversary of the date of judgment in year 2024, a lump sum of $1,678.00. Then, on the anniversary of the date of judgment in year 2034, a lump sum of $1,178.00. Thereafter, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $117.80 to be paid for the remainder of R.R.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

p. For future unreimbursable Home Attendant Care expenses, beginning on the first anniversary of the date of judgment, an annual amount of $21,200.00 to be paid up to the anniversary of the date of judgment in year 2033, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

q. For future unreimbursable Residential Facility Care expenses, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $100,000.00 to be paid up to the anniversary of the date of judgment in year 2065. Thereafter, beginning on the anniversary of the date of judgment in year 2071, an annual amount of $100,000.00 to be paid for the remainder of R.R.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

r. For future unreimbursable Wheelchair Accessible Van and Van Modification expenses, on the anniversary of the date of judgment in year 2022, a lump sum of $41,775.00. Then, on the anniversary of the date of judgment in year 2032, a lump sum of $41,775.00. Then, on the anniversary of the date of judgment in year 2042, a lump sum of $41,775.00. Thereafter, beginning on the anniversary of the date of judgment in year 2043, an annual amount of $4,177.50 to be paid for the remainder of R.R.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

s. For future unreimbursable Van Modification Maintenance expenses, beginning on the anniversary of the date of judgment in year 2022, an annual amount of $2,634.75 to be paid for the remainder of R.R.'s life, amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

6

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the trustee in monthly, quarterly, annual or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the trustee and do not require that the payment be made in one annual installment. The trustee will continue to receive the annuity payments from the Life Insurance Company only so long as R.R. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services, the trustee, and the Life Insurance Company shall be provided within twenty (20) days of R.R.'s death.

11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioners have filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

7

13. Petitioners and their attorney represent that compensation to be provided pursuant to this Stipulation is not for any items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), to the extent that payment has been made or can reasonably be expected to be made under any State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or by entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs, the money provided pursuant to this Stipulation will be used solely for the benefit of R.R. as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioners represent that they presently are, or within 90 days of the date of judgment will become, duly authorized to serve as guardian(s)/conservator(s) of R.R.'s estate under the laws of the State of South Carolina. No payments pursuant to this Stipulation shall be made until petitioners provide the Secretary with documentation establishing their appointment as guardian(s)/conservator(s) of R.R.'s estate. If petitioners are not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of R.R. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of R.R. upon submission of written documentation of such appointment to the Secretary.

8

17. In return for the payments described in paragraphs 8 and 12, petitioners, in their individual capacities and as legal representatives of R.R., on behalf of themselves, R.R., and her heirs, executors, administrators, successors or assigns, do forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300 aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of R.R. resulting from, or alleged to have resulted from the vaccinations administered on March 26, 2012, as alleged by petitioners in a petition for vaccine compensation filed on or about April 21, 2014, in the United States Court of Federal Claims as petition No. 14-321V.

18. If R.R. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated

9

and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioners hereby authorize respondent to disclose documents filed by petitioners in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that the vaccines caused R.R. to suffer from AHLE, ADEM, or any other injury or condition.

23. All rights and obligations of petitioners hereunder shall apply equally to petitioners' heirs, executors, administrators, successors, and/or assigns as legal representatives of R.R.

### END OF STIPULATION

10

Respectfully submitted,

**PETITIONER:**

_Ashley L Rice_
ASHLEY RICE

**PETITIONER:**

CRAIG RICE

**ATTORNEY OF RECORD FOR PETITIONERS:**

EDWARD KRAUS, ESQ.
IIT Chicago-Kent College of Law
565 West Adams Street, Suite 600
Chicago, IL 60661
Tel: (312) 906-5072

**AUTHORIZED REPRSENTATIVE OF THE ATTORNEY GENERAL:**

CATHARINE E. REEVES
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

AUTHORIZED REPRESENTATIVE
OF THE SECRETARY OF HEALTH
AND HUMAN SERVICES:

_Ward Sorensen for_
TAMARA OVERBY
Acting Director, Division of Injury
Compensation Programs
Healthcare Systems Bureau
U.S. Department of Health
and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 11C-26
Rockville, MD 20857

ATTORNEY OF RECORD FOR
RESPONDENT:

TRACI R. PATTON
Senior Trial Attorney
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 353-1589

Dated: _October 18, 2019_

11